TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | |
|---|---|
| OPINION : | No. 91-601 |
| of : | |
| : | AUGUST 23, 1991 |
| DANIEL E. LUNGREN : | |
| Attorney General : | |
| : | |
| RODNEY O. LILYQUIST : | |
| Deputy Attorney General : | |
| : | |

THE HONORABLE JOHN F. HAHN, COUNTY COUNSEL OF AMADOR COUNTY, has requested an opinion on the following question:

May state prisoners and California Youth Authority wards be excluded from the total population for purposes of redistricting county supervisorial districts?

CONCLUSION

State prisoners and California Youth Authority wards may be excluded from the total population for purposes of redistricting county supervisorial districts.

ANALYSIS

Elections Code section 35000[1] provides:

"Following each decennial federal census, and using that census as a basis, the board shall adjust the boundaries of any or all of the supervisorial districts of the county so that the districts shall be as nearly equal in population as may be and shall comply with the applicable provisions of Section 1973 of Title 42 of the United States Code, as amended. In establishing the boundaries of the districts the board may give consideration to the following factors: (a) topography, (b) geography, (c) cohesiveness, contiguity, integrity, and compactness of territory, and (d) community of interests of the districts."

Pursuant to section 35000, the board of supervisors of each county is required to adjust the boundaries of supervisorial districts to reflect the current population. With the 1990 federal census now completed, a county board of supervisors has until November 1, 1991, to redraw district boundaries; otherwise, the boundary adjustments will be made by a county supervisorial redistricting

_____

[1]All section references hereafter are to the Elections Code unless otherwise specified.

commission comprised of the district attorney, the county assessor, and the county clerk (or the county superintendent of schools or the sheriff, depending upon the election procedures in the particular county).  (§§ 35001-35002.)

As specified in section 35000, the objective of the statutory redistricting mandate is to make "the districts . . . equal in population" based upon the federal census figures, while complying "with the applicable provisions of section 1973 of Title 42 of the United States Code, as amended."  The latter federal statute is commonly known as section 2 of the Voting Rights Act of 1965 as amended in 1982.  Essentially it requires that racial and language minority groups be given the same opportunity as "other members of the electorate to participate in the political process and to elect representatives of their choice."  (See *Thornburg* v. *Gingles* (1986) 478 U.S. 30, 43-47; *Garza* v. *County of Los Angeles* (9th Cir. 1990) 918 F.2d 763, 766-776.)

The question presented for resolution is whether a board of supervisors may exclude state prisoners and California Youth Authority wards when adjusting district boundaries pursuant to section 35000.  We conclude that the prisoners and wards may be excluded.

The question arises because those who are to be included for purposes of representation at the federal, state, and local levels of government have not always been precisely defined by statute, constitutional provision, or the courts.  (See *Gaffney* v. *Cummings* (1973) 412 U.S. 735, 747-749; *Burns* v. *Richardson* (1966) 384 U.S. 73, 90-94; *Reynolds* v. *Sims* (1964) 377 U.S. 533, 560-561, 568.)  "Over the years the court has `used the words "inhabitant," "citizen," "resident," and "voter" almost interchangeably in describing those who deserve representation, without indicating which of these bases for measuring substantial equality is most appropriate.' [Citation.]"  (*Calderon* v. *City of Los Angeles* (1971) 4 Cal.3d 251, 255, fn. omitted.)

Apportionment and redistricting calculations based upon total population has been the norm.  (See *Wesberry* v. *Sanders* (1964) 376 U.S. 1, 11-13; *Garza* v. *County of Los Angeles*, *supra*, 918 F.2d at 774; *Calderon* v. *City of Los Angeles*, *supra*, 4 Cal.3d at 258-259, fn. 6; *Federation for Am. Imm. Reform* v. *Klutznick*, (D.D.C. 1960) 486 F.Supp. 564, 576-577; Note, *Reapportionment on the Sub-State Level of Government:  Equal Representation or Equal Vote?* (1970) 50 B.U. L.Rev. 231, 243.)

Nevertheless, it is well established that a legislative body may exclude certain groups of persons from the total population when adjusting district boundaries.  The exclusions require justification based upon legitimate governmental interests.  (*Chapman* v. *Meier* (1975) 420 U.S. 1, 22, 24; *Mahan* v. *Howell* (1973) 410 U.S. 315, 320-322; *Kirkpatrick* v. *Preisler*, (1964) 394 U.S. 526, 533-534; *Garza* v. *County of Los Angeles*, *supra*, 918 F.2d at 773-774.)  "[T]he burden is . . . placed on the jurisdiction whose apportionment is challenged to justify any significant deviation from population equality."  (*Calderon* v. *City of Los Angeles*, *supra*, 4 Cal.3d at 262.)

The following categories of persons have satisfied the United States Supreme Court for possible exclusion:  "aliens, transients, short-term or temporary residents, and persons denied the vote for conviction of crime."  (*Burns* v. *Richardson*, *supra*, 384 U.S. at 92; see *Gaffney* v. *Cummings*, *supra*, 412 U.S. at 746, fn. 12; *Calderon* v. *City of Los Angeles*, *supra*, 4 Cal.3d at 256.)[2]  With respect to these particular groups, the Supreme Court stated in *Burns* v. *Richardson*, *supra*, 384

---

[2]The extent to which military personnel, tourists, and college students may also be excluded for purposes of redistricting is beyond the scope of this opinion.  (See *Kirkpatrick* v. *Preisler, supra*, 394 U.S. at 534-536; *Burns* v. *Richardson*, *supra*, 384 U.S. at 92-96; *Carrington* v. *Rash* (1965) 380 U.S. 89, 93-97; *Davis* v. *Mann* (1964) 377 U.S. 678, 691-692.)

U.S. at 92: "The decision to include or exclude any such group involves choices about the nature of representation with which we have been shown no constitutionally founded reason to interfere."

Consequently, as a matter of legitimate state policy, the Legislature has the authority to exclude state prisoners from the population when county supervisorial district boundaries are adjusted pursuant to section 35000. As will be later explained, these are persons who have been "denied the vote for conviction of crime." The Youth Authority wards may also be excluded as "short-term or temporary residents," assuming they are otherwise eligible to vote. As long as the exclusions are based upon appropriate state interests, no constitutional objection may be validly raised.

Here, we believe that the Legislature has authorized the exclusion of state prisoners and Youth Authority wards. First, we note that section 35000 deals with voting and representation at the county supervisorial level of government. It does not pertain, for example, to such issues or for such purposes as the funding of local programs.

Second, the Legislature has provided that both state prisoners and Youth Authority wards are to be treated as *not* attaining a new and different voting "residency" by virtue of their placements in prisons and state institutions. Section 206 states: "A person does not gain . . . a domicile solely by reason of his or her presence . . . while kept in an almshouse, asylum or prison . . . ." In 55 Ops Cal.Atty.Gen. 125, 131 (1972), we concluded after lengthy analysis of the applicable statutes: "Youth Authority wards will maintain the residence they had at the time of commitment, and such will be their voting residence." Penal Code section 3003, subdivision (a) generally requires that "an inmate who is released on parole shall be returned to the county from which he or she was committed."

Third, the Constitution bars state prisoners from voting. "The Legislature . . . shall provide for the disqualification of electors while . . . imprisoned or on parole for the conviction of a felony." (Cal. Const., art. II, § 4; see *Flood* v. *Riggs* (1978) 80 Cal.App.3d 138, 155.) Section 701 codifies this constitutional directive: "The county clerk shall cancel the registration . . . [u]pon proof that the person is presently imprisoned or on parole for conviction of a felony."

Fourth, the Legislature amended section 35000 in 1990 to add the qualification that the adjustment of supervisorial district boundaries "shall comply with the applicable provisions of Section 1973 of Title 42 of the United States Code, as amended." (Stats. 1990, ch. 1477, § 1.) As previously noted, this latter federal law requires racial and language minority groups to be given the same opportunity as "other members of the electorate to participate in the political process and to elect representatives of their choice." The focus of the federal law is upon the prevention of minority vote dilution based upon past, present, and projected voting patterns. (See *Gomez* v. *City of Watsonville* (9th Cir. 1988) 863 F.2d 1407, 1415-1415; *McNeil* v. *Springfield Park Dist.* (7th Cir. 1988) 851 F.2d 937, 944-945.) As expressed in the Senate Report that accompanied the 1982 amendment of the federal law: "[T]he provision requires the court's overall judgment, based on the totality of circumstances and guided by those relevant factors in the particular case, of whether the voting strength of minority voters is . . . `minimized or cancelled out.'" (Sen.Rep. No. 97-417, 2d Sess., at p. 29, n. 118 (1982).)

Counting state prisoners and Youth Authority wards for purposes of adjusting county supervisorial district boundaries under section 35000 would not serve the expressed goals of the Voting Rights Act as set forth in the language itself and in the cases interpreting its requirements. Rather, inclusion of the two groups might well create an imbalance in voting strength and a dilution of voting power among district voters. For example, if a district has 20,000 in population of which 5,000 are state prisoners, the non-prisoner population in that district will have greater voting power

in selecting a supervisor, as well as greater access to that supervisor, than the non-prisoner populations in the other four districts. A vote in the district containing the state prison will necessarily count more; in comparison, the voting power of persons in the other districts will be diluted. Claims of minority vote dilution will be especially significant if the prisoner and ward populations are not reflective of the racial and language minority populations of the county as a whole.

Accordingly, we believe that the Legislature has adopted a policy allowing for the exclusion of state prisoners and Youth Authority wards for purposes of adjusting supervisorial district boundaries under section 35000. The policy embodies a legitimate state interest of maintaining voting strength among the voters of the various districts. The 1990 amendment of section 35000 incorporates this policy by its reference to the Voting Rights Act, and the Legislature has the constitutional authority to adopt such policy.

In answer to the question presented, therefore, we conclude that state prisoners and California Youth Authority wards may be excluded from the total population for purposes of redistricting county supervisorial districts.

* * * * *